**PELTON GRAHAM LLC**
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.PeltonGraham.com

*Attorneys for Plaintiffs, the*
*putative FLSA Collective and Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **CONCEPCION ALVARO ATEMIS and MIGUEL ZAVALA, Individually and on Behalf of All Others Similarly Situated,**<br><br>**Plaintiffs,**<br><br>-against-<br><br>**KARPENISI DO-NUT SHOP, INC. d/b/a FAME DINER, MIRIKI LLC, GEORGE KANTLIS, JOHN KANTLIS, and MARIA TSIAKAS, Jointly and Severally,**<br><br>**Defendants.** | **CLASS & COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

        Plaintiffs Concepcion Alvaro Atemis and Miguel Zavala (the "Plaintiffs"), individually

and on behalf of all others similarly situated, as class representatives, upon personal knowledge as

to themselves and upon information and belief as to other matters, allege as follows:

## NATURE OF THE ACTION

1.     Plaintiffs are former line cooks, waiters, and dishwashers at Defendants' diner located in Maspeth, New York, County of Queens. For their work, despite being non-exempt employees, Plaintiffs were either paid a fixed salary or on an hourly basis with no overtime premiums for hours worked over forty (40) in a given workweek. Plaintiffs and Defendants' other employees also did not receive spread-of-hours premiums, nor did they receive proper wage notices or wage statements.

2.     Plaintiffs bring this action to recover overtime premium pay owed to them pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq*. Plaintiffs also bring claims for unpaid spread-of-hours premiums and for failure to provide proper wage notices and wage statements, pursuant to NYLL §§ 190 *et seq*. and the supporting regulations.

3.     Plaintiffs bring their FLSA claims on behalf of themselves and all other similarly situated employees of Defendants and their NYLL claims on behalf of themselves and a Federal Rule of Civil Procedure 23 class of all non-management employees working for Defendants in New York.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

5.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial

part of the events or omissions giving rise to the claims asserted herein occurred in this district and Defendants' business is located in this district.

6.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

**Plaintiffs:**

7.     <u>Plaintiff Concepcion Alvaro Atemis</u> ("Atemis") was, at all relevant times, an adult individual residing in Queens County, New York.

8.     <u>Plaintiff Miguel Zavala</u> ("Zavala") was, at all relevant times, an adult individual residing in Queens County, New York.

9.     Throughout the relevant time period, Plaintiffs performed work for Defendants at "Fame Diner," located at 69-67 Grand Avenue, Maspeth, NY 11378.

10.     Plaintiffs consent in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b), and their consent forms are attached hereto.

**Defendants:**

11.     Defendant Karpenisi Do-Nut Shop, Inc. d/b/a as "Fame Diner" is an active New York corporation, with its principal place of business at 69-67 Grand Avenue, Maspeth, NY 11378.

12.     Defendant Miriki LLC ("Miriki" and, together with Karpenisi Do-Nut Shop, Inc., the "Corporate Defendants") is an active New York corporation, with its principal place of business at 26-20 203rd Street, Bayside, New York 11360-2331.

13.     Defendant George Kantlis ("G. Kantlis") is an owner and operator of the Corporate Defendants.

14.    Defendant John Kantlis ("J. Kantlis") is an active owner and operator of the Corporate Defendants.

15.    Defendant Maria Tsiakas ("Tsiakas" and, together with G. Kantlis and J. Kantlis, the "Individual Defendants" and, together with the Corporate Defendants, the "Defendants"), is an active owner and operator of the Corporate Defendants.

16.    Upon information and belief, the Corporate Defendants operated together as a single business enterprise throughout the relevant time period.

17.    Upon information and belief, the Individual Defendants maintained operational control over and managed the Corporate Defendants by supervising and determining the wages and compensation of employees, establishing employees' work schedules, maintaining employee records, and through possessing the authority to hire and fire employees, including Plaintiffs.

18.    The Individual Defendants participated in the day-to-day operations of the Corporate Defendants and acted intentionally in their direction and control of Plaintiffs and the Defendants' other similarly situated employees, and are each an "employer" pursuant to the FLSA, 29 U.S.C. § 203(d), 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and are jointly and severally liable with the Corporate Defendants.

19.    At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

20.    At all relevant times, Defendants employed, and/or continue to jointly employ, Plaintiffs and each of the Collective Action members within the meaning of the FLSA.

21.    At all relevant times, Plaintiffs, the opt-in plaintiffs and the Class Members were

employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

22.     Upon information and belief, at all relevant times, the Corporate Defendants have had gross revenues in excess of $500,000.00.

## FLSA COLLECTIVE ACTION ALLEGATIONS

23.     Pursuant to 29 U.S.C. §§ 206, 207 & 216(b), Plaintiffs bring their First Cause of Action as a collective action under the FLSA on behalf of themselves and the following collective:

> All persons employed by Defendants at any time since March 4, 2017 and through the entry of judgment in this case (the "Collective Action Period") who worked as non-management employees at Fame Diner (the "Collective Action Members").

24.     A collective action is appropriate in this circumstance because Plaintiffs and the Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policy of failing to pay overtime premiums for work performed in excess of forty (40) hours each week.  As a result of this policy, Plaintiffs and the Collective Action Members did not receive the legally-required overtime premium payments for all hours worked in excess of forty (40) hours per week.

25.     Plaintiffs and the Collective Action Members have substantially similar job duties and are paid pursuant to a similar, if not the same, payment structure.

## NEW YORK CLASS ACTION ALLEGATIONS

26.     Pursuant to the NYLL, Plaintiffs bring their Second through Fifth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following class:

> All persons employed by Defendants in New York at any time since March 4, 2014 and through the entry of judgment in this case (the "Class Period") who worked as non-management employees at

Fame Diner (the "Class Members").

27.    <u>The Class Members are readily ascertainable</u>. The number and identity of the Class Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Fed. R. Civ. P. 23.

28.    <u>The Class Members are so numerous that joinder of all members is impracticable</u>.

29.    Upon information and belief, there are well in excess of forty (40) Class Members.

30.    <u>The questions of law and fact common to the Class predominate over any questions solely affecting the individual members of the Class</u>. These common questions include, but are not limited to:

   a.   whether Defendants employed Plaintiffs and the Class Members within the meaning of the NYLL;

   b.   whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the Class Members;

   c.   whether Defendants failed and/or refused to pay Plaintiffs and the Class Members overtime premiums for hours worked in excess of forty (40) hours per workweek;

   d.   whether Defendants failed to pay Plaintiffs and the Class Members an extra hour of minimum wage when working shifts in excess of ten (10) hours or split shifts;

   e.   whether Defendants failed to provide Plaintiffs and the Class Members with a proper statement of wages with every wage payment as required by the NYLL;

f.   whether Defendants failed to provide proper wage notice to Plaintiffs and Class Members at the beginning of their employment and/or on February 1 of each year as required by the NYLL;

g.   whether Defendants' failure to properly pay Plaintiff and the Class Members lacked a good faith basis; and

h.   whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

31.   <u>Plaintiffs' claims are typical of the Class Members' claims</u>. Plaintiffs, like all Class Members, are restaurant employees of Defendants who worked for Defendants pursuant to their corporate policies. Plaintiffs, like all Class Members, were, *inter alia*, not paid overtime premium pay for hours worked over forty (40) hours in a given workweek, and did not receive proper wage statements and wage notices.

32.   If Defendants are liable to Plaintiffs for the claims enumerated in this Complaint, they are also liable to all Class Members.

33.   <u>Plaintiffs and their Counsel will fairly and adequately represent the Class</u>. There are no conflicts between Plaintiffs and the Class Members, and Plaintiffs bring this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover their own damages.

34.   Plaintiffs' counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

35.   <u>A class action is superior to other available methods for the fair and efficient adjudication of this litigation</u>.

36.    Defendants are sophisticated parties with substantial resources. The individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

37.    The individual members of the Class have no interest or capacity to bring separate actions; Plaintiffs are unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## STATEMENT OF FACTS

**Defendants' Diner**

38.    Defendant Karpenisi Do-nut Shop, Inc. was registered with the New York State Department of State, Division of Corporations on April 29, 1983.

39.    Upon information and belief, Karpenisi Do-nut Shop, Inc., was initially jointly owned and operated by Angelo Kantlis and his spouse, Georgia Kantlis, until his passing on February 12, 2015.

40.    Upon information and belief, Miriki LLC owns the premises of Fame Diner.

41.    Upon information and belief, the Individual Defendants utilized the revenues of the Corporate Defendants interchangeably to pay cash wages to their employees, including Plaintiffs.

42.    Upon information and belief, Fame Diner operates Monday thru Saturday from 6:00 am to 11:00 pm, and on Sunday from 6:00 am to 10:00 pm (http://www.famediner.com/hours.html).

43.    Upon information and belief, the Individual Defendants are a constant presence at the diner and take an active role in monitoring its course of business, including hiring and

supervising its employees.

44.    Upon information and belief, at all times relevant, the Individual Defendants have held the power and authority to hire and fire employees, set their wages, retain time and/or wage records, and otherwise control the terms and conditions of their employment.

**Plaintiffs' Work for Defendants**

45.    Plaintiff Atemis was employed by Defendants at Fame Diner during three separate but proximate employment periods (the "Atemis Employment Period"). His initial employment period was from on or about September 27, 2016 through on or about November 11, 2019. Atemis was then rehired by Defendant G. Kantlis approximately in mid-January 2020 until in or around mid-February, when he was terminated by one of Defendants' managers. Atemis was then re-hired by Defendants as of February 28, 2020 and is presently working for Defendants.

46.    Throughout the Atemis Employment Period, Atemis worked as a waiter and counter worker for Defendants. His duties consisted of preparing delivery orders, relaying food orders to the kitchen staff, serving customers, and ensuring that the dessert window displays were polished, among other tasks. Atemis' job position and duties remained the same throughout his separate employment periods.

47.    From the start of the Atemis Employment Period to in or around November 2016, Plaintiff Atemis typically worked four (4) days per week, with Mondays, Tuesdays, and Fridays off. During this time, Plaintiff Atemis worked from approximately 2:00 pm to approximately 10:00 pm each day, for a total of approximately thirty-two (32) hours per week. Thereafter, until the end of the Atemis Employment Period on or about November 11, 2019, Atemis worked five (5) days per week, with Mondays and Tuesdays off, from approximately 2:00 pm to approximately 10:00

pm, and sometimes later, for a total of approximately forty (40) hours per week and sometimes as much as forty-eight (48) hours per week. Atemis' schedule remained the same when he was rehired in both January 2020 and as of February 28, 2020.

48.    For his work, from the start of the Atemis Employment Period until on or about December 31, 2017, Atemis received a flat hourly rate of seven dollars and fifty cents ($7.50). Thereafter, until on or about December 31, 2018, Atemis received a flat hourly rate of eight dollars and sixty-five cents ($8.65). From December 31, 2018 until November 11, 2019, Atemis received a flat hourly rate of ten dollars ($10.00). Atemis continued to receive the flat hourly rate of ten dollars ($10.00) when he was rehired in both January 2020 and on February 28, 2020. In addition to his hourly rate, throughout the Atemis Employment Period, Atemis also received tips.

49.    Throughout the Atemis Employment Period, Atemis received his wages by payroll check, which indicated the number of hours he worked per pay period, his rate of pay, deductions from his gross pay, and cash and credit tip earnings. However, Atemis' checks did not always accurately reflect the total number of hours worked, since they often excluded any overtime hours worked. Throughout the Atemis Employment Period, on most workweeks when Atemis worked in excess of forty (40) hours, Atemis was paid the same flat hourly rate for all hours worked and typically received compensation for the hours in excess of forty (40) in cash since those hours were not included on his payroll check. When Atemis received his overtime compensation in cash, Atemis was told by Managers that his overtime compensation was subject to withholdings and deductions, but at no point was he provided with any supplemental document listing or explaining such deductions. When Atemis inquired about overtime pay to Defendant G. Kantlis, he was told that no overtime was paid to employees at the diner.

50.     Atemis also often received his wages in an untimely manner and was given checks with insufficient funds, resulting in overdraft fee charges to his bank account.

51.     Plaintiff Zavala ("Zavala") was employed by Defendants at Fame Diner from in or around 1997 through in or around November 2017 (the "Zavala Employment Period").

52.     Throughout the Zavala Employment Period, Zavala was employed as a cook and grill man by Defendants. His duties generally consisted of preparing food orders, ensuring a clean kitchen area that was in compliance with food and safety regulations, and at times, and mainly during the evening shift, also dishwashing, among other tasks.

53.     Throughout the Zavala Employment Period, Zavala typically worked six (6) days per week, with Mondays off. On Tuesdays to Sundays, Zavala typically worked from approximately 12:00 noon to approximately 10:00 pm, and sometimes later, for a total of at least ten (10) hours per day. In total, Zavala typically worked at minimum sixty (60) hours per week, and at times, as much as sixty-six (66) hours. Throughout the Zavala Employment Period, Plaintiff was only allowed to take a meal break limited to between ten (10) to fifteen (15) minutes each shift.

54.     Throughout the Zavala Employment Period, Zavala received his wages in cash payments with no pay stub or any other document indicating his rate of pay, hours worked per pay period, nor any reasonable deductions from his gross pay. During the relevant time period from in or around 2014 until in or around 2017, Plaintiff received a flat rate of approximately six-hundred dollars ($600.00) per week, as compensation for all hours worked, including those over forty (40) hours. Thereafter, from in or around 2017 until the end of his employment, Zavala received a fixed salary of approximately seven hundred dollars ($700.00) as compensation for all hours worked,

including those over forty (40).

55.    At no point during Zavala's employment period did Defendants maintain a timekeeping system that would have properly recorded all of the hours Zavala worked. In fact, on several occasions, Zavala raised the issue that his cash payment was missing an additional day of work, which would then cause delays of up to four (4) weeks for him to receive his full wages.

56.    Plaintiff was not paid overtime premiums of one and one-half (1.5) times his regular hourly rate for all hours worked over forty (40) each workweek, and was not paid an extra hour of minimum wage for days in which he worked in excess of ten (10) hour shifts.

**Defendants' Unlawful Corporate Policies**

57.    Plaintiffs and the Class Members were all paid pursuant to the same corporate policies of Defendants, including failing to pay overtime premiums.

58.    Plaintiffs have spoken with other employees of Defendants who were similarly not paid overtime premiums for hours worked over forty (40) each week. Defendants' failure to pay Plaintiffs overtime premiums is a corporate policy of Defendants which applies to all of their non-management employees throughout the Class Period.

59.    Defendants have not provided Plaintiffs or Class Members with proper statement of wages containing the dates of work covered by their wage payments; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

60.     Defendants have not provided Plaintiffs or Class Members with proper wage

notices at the time of hire, annually by February 1 of each year, or when their wage rate changed.

61.    Throughout the Class Period and, upon information and belief, continuing until today, Defendants have likewise employed other individuals like Plaintiffs in positions that require little skill and no capital investment.

62.    Upon information and belief, such individuals were not paid one and one-half (1.5) times their regular rate when working in excess of forty (40) hours per week, and were not paid spread-of-hours premiums.  Additionally, such individuals were not provided with proper wage statements with their wage payments and were not provided wage notices at hiring, by February 1 of each year, and/or when their wage rate changed.

63.    Upon information and belief, throughout the Class Period and continuing until today, defendants failed to maintain accurate and sufficient time and payroll records or provide such records to employees.

### FIRST CAUSE OF ACTION
### FAIR LABOR STANDARDS ACT – UNPAID OVERTIME
### (Brought on Behalf of Plaintiffs and the Collective Action Members)

64.    Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

65.    By failing to pay Plaintiffs overtime at a rate not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

66.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

67.    Defendants' failure to pay overtime caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiffs and the Class Members)**

68.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

69.    Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half (1.5) times the regular rate of pay for hours worked in excess of 40 each week, in violation of the NYLL and regulations promulgated thereunder.

70.    Defendants' failure to pay overtime premium compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**THIRD CAUSE OF ACTION**
**NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE NOTICES**
**(Brought on Behalf of Plaintiffs and the Class Members)**

71.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

72.    Defendants have willfully failed to supply Plaintiffs and the Class Members notice as required by Article 6, § 195(1), in English or in the language identified by Plaintiffs and the Class Members as their primary language, containing Plaintiffs' and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay, if applicable;  the regular pay day designated by the employer in accordance with the NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer' the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

73.    Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants fifty dollars ($50) per employee for each day that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per employee, as provided for by NYLL, Article 6, §§ 190, *et seq*., liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**FOURTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE STATEMENTS**
**(Brought on Behalf of Plaintiffs and the Class Members)**

74.    Plaintiffs, on behalf of themselves and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

75.    Defendants have willfully failed to supply Plaintiffs and Class Members with an accurate statement of wages as required by NYLL, Article 6, § 195(3), containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

76.    Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants two hundred and fifty dollars ($250) per employee for each day that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**FIFTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID SPREAD-OF-HOURS PREMIUMS**
**(Brought on Behalf of Plaintiffs and the Class Members)**

77.     Plaintiffs, individually and on behalf of the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

78.     Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay compensation in an amount equal to one hour's pay at the relevant minimum wage in all instances where Plaintiffs and the Class Members worked either a split shift or more than ten (10) hours per day, in violation of the NYLL §§ 650, *et seq.*, and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. tit. 12, §§ 137-1.7 (2010), 146-1.6 (2012).

79.     Defendants' failure to pay spread-of-hours compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid spread-of-hours compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

## PRAYER FOR RELIEF

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Collective Action Members and Class Members, respectfully request that this Court grant the following relief:

a.     Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

b.      Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiffs and their counsel to represent the Class;

c.      An order tolling the statute of limitations;

d.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

e.      An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.      An award of compensatory damages as a result of Defendants' failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.      An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

h.      An award of actual and liquidated damages for the non-payment of spread-of-hours pay for each split shift and/or shift worked in New York in excess of ten (10) hours;

i.      Fifty dollars ($50) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195(1) occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-b;

j.      Two hundred and fifty dollars ($250) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195(3) occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-d;

k.      An award of prejudgment and post-judgment interest;

l.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

m.      Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
      March 4, 2020

Respectfully submitted,

**PELTON GRAHAM LLC**

By: _____

Brent E. Pelton (BP 1055)
Pelton @PeltonGraham.com
Taylor B. Graham (TG 9607)
Graham@PeltonGraham.com
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiffs, the putative FLSA Collective and Class*

19

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Fame Diner/Karpenisi Do-Nut Shop, Inc. and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_____
Signature

Concepción Alvaro Atemis
Printed Name

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal en mi nombre y representación en contra de Fame Diner/Karpenisi Do-Nut Shop, Inc. y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados para que me sean pagadas las horas extras y los salarios mínimos tal como lo requieren las normas estatales y/o federales e igualmente autorizo la presentancion de este consentimiento en la acción(es) con el fin de debatir la conducta ilegal. Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos inicialmente de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_____
Firma

Concepción Alvaro Atemis
Nombre Escrito

This is a complete and accurate translation of the English "Consent to Become a Party Plaintiff" form above.

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Fame Diner/Karpenisi Do-Nut Shop, Inc. and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_____
Signature

Miguel-Zavala
Printed Name

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal en mi nombre y representación en contra de Fame Diner/Karpenisi Do-Nut Shop, Inc. y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados para que me sean pagados las horas extras y los salarios mínimos tal como lo requieren las normas estatales y/o federales e igualmente autorizo la presentancion de este consentimiento en la acción(es) con el fin de debatir la conducta ilegal. Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos inicialmente de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_____
Firma

Miguel-Zavala
Nombre Escrito

This is a complete and accurate translation of the English "Consent to Become a Party Plaintiff" form above.