**PELTON GRAHAM** LLC

ADVOCATES FOR JUSTICE

May 18, 2021

Brent E. Pelton, Esq.
Pelton@PeltonGraham.com

**VIA ECF**

Honorable Robert M. Levy
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *Atemis, et al. v. Karpenisi Do-Nut Shop, Inc., et al.*
              <u>Civil Action No. 20-cv-1200 (RML)</u>

Dear Judge Levy:

      This office represents Concepcion Alvaro Atemis and Miguel Zavala (the "Named Plaintiffs") and opt-in plaintiffs Gabriel Molina, Filomeno Cristobal Castro, Mauro Hernandez, Ambiori Pimentel, Artemio Lopez, Federico Molina, Filiberto Molina, Isabel Cristina Tamayo, Jose Luis Salvador, Miguel Avilez and German Tello (the "Opt-In Plaintiffs" and, collectively with the Named Plaintiffs, "Plaintiffs"). We write, jointly with counsel for Karpenisi Do-Nut Shop, Inc. d/b/a Fame Diner, Miriki LLC, George Kantlis, John Kantlis and Maria Tsiakas (hereinafter "Defendants"), pursuant to the Fair Labor Standards Act ("FLSA") and the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). Counsel for the parties respectfully submit that the negotiated Settlement Agreement (attached as **Exhibit A** to the Affidavit of Brent E. Pelton, Esq.) constitutes a fair and reasonable compromise of this matter which should be approved by the Court.

**I.**      **Procedural History and Plaintiffs' Allegations**

      The Named Plaintiffs commenced this action by filing their Class & Collective Action Complaint in the Eastern District of New York ("EDNY") on March 4, 2020. (Dkt. No. 1). Defendants filed their Answer on May 13, 2020 denying all material allegations. (Dkt. No. 9).

      On June 4, 2020, Magistrate Judge Orenstein[1] held an initial conference and issued two orders setting multiple deadlines including briefing or stipulation of conditional certification of an FLSA § 216(b) collective (Dkt. No. 13) and a discovery schedule. (Dkt. No. 14). On June 18, 2020, the parties stipulated to conditional certification of a § 216(b) collective consisting of all non-management employees of Fame Diner who worked between March 4, 2017 and June 19, 2020. (Dkt. No. 16).   During the pendency of this Action, including an extended opt-in period (Order of

---

[1] The Action was reassigned from Judge Orenstein to Judge Levy on November 17, 2020. (*See* Docket Event dated Nov. 17, 2020).

**New York**: 111 Broadway, Suite 1503, New York, NY 10006  Tel. 212-385-9700  Fax 212-385-0800
**San Francisco**: 456 Montgomery Street, 18th Fl., San Francisco, CA 94104  Tel. 415-437-9100  Fax 212-385-0800

www.PeltonGraham.com

the Court dated Dec. 14, 2020) a total of eleven (11) plaintiffs opted-in to the lawsuit. (Pelton Aff. ¶ 7).

Plaintiffs exchanged initial disclosures including certain schedules, paystubs and paycheck copies, a letter confirming employment, and communications regarding bounced checks from Defendants in the possession of the Named Plaintiffs. (Pelton Aff. ¶ 8). Plaintiffs also exchanged initial damages calculations on June 3, 2020. (*Id.*). Defendants produced certain tax returns, wage notices, weekly pay sheets, copies of paychecks, payroll summaries, workers' compensation and other insurance documentation, and certain releases signed by employees including some Named and Opt-in Plaintiffs. (*Id.* ¶ 9).

On December 14, 2020, the Court referred the parties to mediation (Order of the Court dated Dec. 14, 2020) and subsequently set deadlines for the mediation as well as certain pre-mediation discovery. (Minute Entry dated Jan. 14, 2021). Elena Paraskevas-Thadani was selected as mediator and mediation scheduled for March 24, 2021. (Docket Entry dated Jan. 26, 2021). In anticipation of the March 24, 2021 mediation, the parties exchanged pre-mediation discovery, including Plaintiffs' revised damages analysis showing damages for all opt-in Plaintiffs and reflecting Defendants' records. (Pelton Aff. ¶ 10).

The parties reached a settlement in principle at the March 24, 2021 mediation. (*Id.* ¶ 11). Over the next several weeks, the parties finalized the terms of the settlement and drafted and executed the Settlement Agreement attached hereto. (*Id.*). As per the Declaration of Belinda Herazo, attached hereto as **Exhibit B**, as well as the Settlement Agreement, the Settlement Agreement as well as the mediation proceedings have been translated into Spanish for each of the Plaintiffs who speak Spanish as a native language. (*Id.* ¶ 12).

II.     **The Settlement Accounts for Litigation Risk**

Plaintiffs worked as non-management restaurant employees who worked in both front of the house and back of the house positions at Fame Diner, located in Queens, New York. Plaintiffs alleged that they were either paid a flat weekly rate that often fell below the minimum wage and did not include overtime premiums or hourly rates at the tipped minimum wage that did not include payment for off-the-clock time. As a result of these payment policies, Plaintiffs allege that they were often paid at rates that fell below the correct minimum wage, that Defendants were not eligible to take the tip credit as to front of the house employees, that they did not receive overtime premiums for all hours worked in excess of forty (40) per week, and did not receive spread of hours premiums when they worked in excess of ten (10) hours in a given day.  Plaintiffs allege that Defendants did not provide them with accurate wage statements, as the wage statements received by certain Plaintiffs did not accurately reflect their hours worked or wages paid and other Plaintiffs did not receive any wage statements whatsoever, particularly prior to 2017. Likewise, Plaintiffs allege that Defendants did not provide any wage notices prior to 2017 and that the wage notices that Defendants did subsequently provide were ineligible to satisfy the requirements of NYLL § 195(a)(1) as well as the NYLL and FLSA tip credit requirements for tip credit

Hon. Robert M. Levy
FLSA Settlement Fairness Letter
Page **3** of **6**

notification, as they were provided in English and were not explained to employees who signed them.

Throughout the litigation, the Parties have disputes issues of fact regarding Plaintiffs' employment, as well as merits issues. It is Plaintiffs' position that Defendants' records provide very little accurate information as to back of the house employees, often showing a standardized number of hours worked and only reflecting the portion of their wages paid by check without showing the amounts paid in cash. As to front of the house employees, it is Plaintiffs' position that Defendants' records are flawed and inaccurate, as they fail to account for a significant amount of off the clock work performed by these employees. Defendants counter that while the records may not be perfect in all instances, this is not a case without records, as they did maintain records of hours worked and wages paid, and have therefore satisfied their burden in that respect. While Plaintiffs believe that a factfinder would credit their testimony and characterization of the records' flaws over Defendants, Plaintiffs recognize that the existing time and pay records could potentially limit the amount of damages Plaintiffs could recover at trial.

Defendants have also produced releases and arbitration agreements signed by several Plaintiffs, often in exchange for a cash payment of a portion of outstanding unpaid wages. It is Plaintiffs' position that these releases are incapable of releasing Defendants' liability for unpaid wages, wage notification damages, or any other damages arising from Plaintiffs' employment or of compelling Plaintiffs' claims to arbitration, based on the terms of the releases and agreements, as well as the circumstances under Plaintiffs' signatures were obtained. Defendants take the position that the releases were entered into in exchange for a settlement payment under full knowledge of the plaintiffs, and in their native language, such that they should function as proper releases of their claims. Despite the difference in opinion regarding the legal significance of the release documents, Plaintiffs recognize that these documents could likewise limit Defendants' liability for wage and hour damages.

The damages analysis created by Plaintiffs for the March 24, 2021 mediation calculated $702,272.63 in unpaid wage damages, consisting of $359,428.88 in unpaid minimum wage, $324,028.61 in unpaid overtime, and $18,815.14 in unpaid spread of hours premiums. Plaintiffs further calculated $702,272.63 in liquidated damages, $130,000.00 in wage notice and wage statement damages, and $251,707.99 in interest as of the date of the mediation statement, for a grand total of $1,786,253.25. Although there is a possibility that Plaintiffs could recover higher damages if the case proceeded to trial, there is also the possibility that they could receive much lower damages, or nothing at all, or that Defendants would be unable to pay a higher judgment. As mentioned above, the Parties have several disputes as to the facts and merits of Plaintiffs' claims. Accordingly, Plaintiffs prefer to settle now, on an individual basis, for an amount that they would be guaranteed to receive under the terms of the settlement, particularly as the diner closed in March 2020 with no plans to re-open.

The parties believe that the settlement amount (i.e., $495,000.00), which constitutes over 70% of Plaintiffs' calculated unpaid wage damages, is a fair recovery based on the risks associated with establishing Defendants' liability and the calculated damages, as well as the risks associated

with proceeding to trial and the risk that Defendants would be unable to pay a higher judgment due to the closure of the diner at the beginning of the COVID-19 pandemic in March 2020.

### III.     Settlement Terms

As set forth in the attached Settlement Agreement, the parties have agreed to settle this action for a total settlement amount of $495,000.00 (the "Settlement Amount"). Of the Settlement Amount, $166,446.27 is payable to Plaintiffs' counsel (consisting of $2,169.41 in expense reimbursement and $164,276.86 in attorneys' fees). The remaining $328,553.73 is payable directly to Plaintiffs (the "Net Settlement Amount") in the form an initial payment and six (6) installment payments over eighteen (18) months following Court approval of the settlement.

Keeping in line with the trend in this Circuit following *Cheeks*, the parties have agreed to a wage-and-hour release for any claims arising before Plaintiffs signed the Settlement Agreement. The parties also did not include a confidentiality provision and have specifically included language in the Agreement making it clear that nothing in the Agreement precludes the parties from truthfully communicating their experiences concerning the Action or Settlement. The agreement does not contain any confidentiality or non-disparagement provisions that in some instances "can be contrary to public policy because they prevent the spread of information about FLSA actions to other workers (both employees of Defendants and others), who can then use that information to vindicate their statutory rights." *Gaspar v. Pers. Touch Moving, Inc.*, No. 13 Civ. 8187 (AJN), 2015 U.S. Dist. LEXIS 162243, *3 (S.D.N.Y. Dec. 3, 2015).

### IV.     Plaintiffs' Attorney's Fees and Expenses

As set forth in the Affidavit of Brent E. Pelton, Esq., as of May 17, 2021, Plaintiffs' counsel has spent more than 274 hours in prosecuting and settling this matter over the past approximately fourteen (14) months, resulting in a lodestar of $70,048.18. (*See* Pelton Aff. Ex. C). Plaintiffs' counsel has spent $2,169.41 in actual litigation costs. (*Id.* at Ex. D). The portion of the settlement amount that Plaintiffs seek as attorneys' fees (i.e., $164,276.86) represents one-third (1/3) of the settlement amount, after subtracting the actual litigation costs, which represents a modest 2.3 times lodestar amount and is consistent with what was agreed upon between the Plaintiffs and their counsel in their retainer agreements.

The hourly billing rates utilized by Plaintiffs' counsel in calculating the lodestar are within the range paid to attorneys of similar experience and professional focus in the Eastern District of New York. In fact, the same rates have been approved in connection with a recent wage and hour default judgment in the Eastern District. *See, e.g., Guinea v. Garrido Food Corp.*, No. 19-CV-5860 (BMC), 2020 U.S. Dist. LEXIS 5476, at *4-5 (E.D.N.Y. Jan. 11, 2020) (Providing that rates of "$350-$450 per hour for partner time, $250-$300 per hour for associate time, and $125-$175 per hour for paralegal time…are reasonable and consistent with rates allowed in this district."). Accordingly, Plaintiffs' counsel submits that the attorney's fees component of the settlement is fair and reasonable, particularly given that the settlement is to be paid out over a period of eighteen (18) months and therefore will require substantial additional time spent by Plaintiffs' counsel.

### V. The Parties Believe that the Settlement Is Fair and Reasonable

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Cheeks*, *supra*; *Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc*., No. 11-cv-0529, 2013 U.S. Dist. LEXIS 20543, at *8 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig*., No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-cv-86, 2008 U.S. Dist. LEXIS 20786 at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food,* 679 F.2d at 1354). Although the FLSA places "limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver," *Wolinsky*, 900 F. Supp. 2d at 335 (alteration in original) (internal quotation marks omitted), "these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here." *Cisneros v. Schnipper Restaurant LLC*, No. 13-cv-6266, 2014 U.S. Dist. LEXIS 2111, *3 (S.D.N.Y. Jan. 8, 2014).

Here, there is no question that the settlement did not come about because of "overreaching" by the employer. To the contrary, the settlement was the result of substantial litigation on issues surrounding discovery disputes and the 216(b) conditional certification opt-in period and vigorous arm's-length negotiations including a mediation before a neutral third party, extensive discussions, written discovery, and exchanges of damages that took place over the course of several months. The parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation. The negotiated settlement is fair and reasonable when considered in the context of the litigation risks faced by Plaintiffs, including time and wage records and releases produced by Defendants. Due to the several disputed issues of fact, the parties would likely need to engage in substantial motion practice, including class certification, as well as additional discovery, including numerous depositions, which would consume a tremendous amount of time and resources. Rather than move forward with lengthy and costly litigation, settlement at this stage of the case unquestionably constitutes the most efficient and effective conclusion to this litigation.

*   *   *   *   *

As demonstrated above, the settlement is a result of substantial negotiations and compromise by both parties. The parties believe that the settlement is completely fair, reasonable, and adequate to the Plaintiffs and respectfully request that the Court approve the Agreement.

We appreciate Your Honor's attention to this matter. Please contact the undersigned counsel for the parties should you have any questions regarding this submission.

Respectfully submitted,

By: */s Brent Pelton, Esq.*
Brent E. Pelton, Esq.
Taylor B. Graham, Esq.
**PELTON GRAHAM LLC**
111 Broadway, Suite 1503
New York, New York 10006

*Attorneys for Plaintiffs*

By: */s Perry Ian Tischler, Esq.*
Perry Ian Tischler, Esq.
**LAW OFFICES OF PERRY IAN TISCHLER P.C.**
38-39 Bell Boulevard, Suite 203
Bayside, New York 11361


By: */s Peter Metis, Esq.*

Peter Metis, Esq.
**LAW OFFICES OF PETER METIS, LLC**
46 Trinity Place, 5th Floor
New York, New York 10006

*Attorneys for Defendants*

cc:    All counsel (via ECF)